IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 4, 2025

**BRYANT WARD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 19-05876     Paula Skahan, Judge

_____

**No. W2024-00630-CCA-R3-PC**

_____

The Petitioner, Bryant Ward, pleaded guilty to second degree murder, in exchange for a twenty-year sentence. The Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that he was on a medication that inhibited his ability to enter a knowing and voluntary guilty plea. After a hearing, the post-conviction court denied relief. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and, MATTHEW J. WILSON, JJ., joined.

John P. McNeil, Memphis, Tennessee, for the appellant, Bryant Ward.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Melissa L. Harris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This post-conviction appeal stems from the Petitioner's indictment by the Shelby County grand jury for the first degree murder of Bryan Harvey on May 15, 2019. The Petitioner entered a plea of guilty to second degree murder, in exchange for a twenty-year sentence.

On February 24, 2022, the trial court held a hearing regarding the Petitioner's guilty plea. The State said that, had the case gone to trial, it would have proven the following:

[T]hat on May 15, 2019, Officers responded at [an address] in Cordova, Tennessee. Officers located a male with several gunshot wounds. The male was identified as Bryan Harvey. He was already deceased on the scene by the time the police got there.

Police found 25 spent 9 millimeter shell casings on the scene. The victim's vehicle was also on the scene full of defects and shattered glass. There w[ere] also apparent blood stains in the victim's vehicle.

Detectives located doorbell camera footage which showed the victim on it. Surveillance video identified a black sedan at the scene, two individuals exiting the vehicle when the shooting occurred.

Through investigation, the vehicle was found to be registered to a Brittany Ward who gave a statement describing what occurred and that the other suspect in the video was [the Petitioner and that he was the shooter.

His cell phone GPS records, as well as a search . . . of the phone indicted that [the Defendant] was on the scene and responsible for the shooting.

The defense stipulated that the State would have proven these facts if the case went to trial. The trial court questioned the Petitioner about the voluntariness and understanding of the plea. The Petitioner said that he had graduated from high school. He said that he understood that he had a right to a jury trial where he could call witnesses and cross-examine the State's witnesses. He wanted to give up this right. He similarly understood what the State would have to prove to convict him of first degree murder and that he had a right to appeal the jury's verdict after trial.

The trial court asked the Petitioner about trial counsel's ("Counsel") representation, and the Petitioner agreed that there was nothing that Counsel did not do that he wanted done. He also agreed that Counsel hired an investigator who had investigated the case. The trial court asked him if he was satisfied with Counsel's representation, and he responded, "Very satisfied." The Petitioner asked to speak and said:

On May 15, 2019, I shot and killed Mr. Harvey. I'm sorry I put you through losing somebody. I lost people before and I hate that my actions made someone else feel the way I did or maybe worse. I can't say I feel your pain but I feel sympathy for your pain. I take full responsibility for what I did and I know there isn't any excuse for what happened.

2

The Petitioner indicated that he took medication for PTSD and that he was not on medication at the time of the murder, but wished he would have been as it may have changed the outcome of the events.

Based upon this, the trial court accepted the Petitioner's plea of guilty to second degree murder and imposed the plea-bargained twenty-year sentence.

The Petitioner filed a timely petition for post-conviction relief in which he alleged that, among other things, he was unlawfully induced to plead guilty and that his conviction was based on a coerced confession and evidence obtained from an unlawful arrest. He said that when he entered his guilty plea he was under the influence of a medication for a medical illness, and the side effects of the medication rendered him unable to understand the nature and consequences of his plea. He said he was coerced into signing his statement and coerced to give "a complaint confession" by Counsel and the prosecutor. The petitioner enumerated multiple other grounds that the Petitioner contended entitled him to post-conviction relief.

At the hearing on the petition, the Petitioner testified that he was indicted September 25, 2019, for first degree murder and entered his plea February 24, 2022. He did not recall that his trial was set to commence two weeks later. He said he did not know "what made [him] enter" the guilty plea but suspected it was due in part to medication he was taking for a mental health issue.

The Petitioner did not remember when Counsel informed him of the plea offer or any discussions about the plea offer. He said that Counsel did discuss the facts of the case and discovery, but his "main thing" was that the State could not prove he acted with premeditation, so he wanted to go to trial. The Petitioner said he did not know why he did not go to trial and entered a guilty plea.

The Petitioner said he did not remember much surrounding the guilty plea hearing, blaming the memory gap on his medication, Zyprexa, which was a medication prescribed to him while he was in jail. The Petitioner said he was hearing voices and seeing things, and as a result was prescribed the medication.

The Petitioner said that he had previously sought medical treatment from the VA as he was a veteran who had served overseas. The VA diagnosed him with a mental condition, but he did not remember what it was, and he never received medication or help. When he was incarcerated, a medical doctor prescribed the Zyprexa, which the Petitioner was taking at the time of his guilty plea. The Petitioner subsequently insisted on not taking the medication so he could focus on his case.

The Petitioner said that the medication made him not in his "sound mind." He operated on "autopilot" and did not engage in pretrial discussions. He said that, since ceasing the medication, he felt as if he could talk.

The Petitioner described Counsel's investigation as "not a hundred percent," saying that there were favorable witness statements that he never received. The main witness against him was his own sister, and her statements were inconsistent. The Petitioner agreed that Counsel went to speak with his sister.

The Petitioner said that Counsel did not want him to go to trial, but he repeatedly expressed his desire for a trial.

The Petitioner also complained that Counsel did not object to his arrest warrant, which wrongfully alleged he committed first degree murder. He also said that she did not move to exclude his statement, which he gave to police without being given his Miranda warnings. He then said that the police gave him his Miranda warnings and he signed the waiver, but that the police should have stopped questioning him when he asked to speak with his attorney. The Petitioner agreed that Counsel filed a motion to suppress his statement and that the State agreed not to introduce his statement during the trial.

The Petitioner said that his statement at the guilty plea hearing apologizing to the victim's family and accepting responsibility for the shooting was "definitely coerced." The Petitioner said that those were not the words that he "drew up." The Petitioner said he did not remember that his agreed sentence as part of the plea was twenty-five years unless he apologized and then it was twenty years.

During cross-examination, the Petitioner agreed that he was on medication at the time of his guilty plea hearing because he was hallucinating. Off his medication, he felt more able to focus. The Petitioner acknowledged, but did not recall, testifying at his guilty plea hearing. When confronted with his answers to the questioning, the Petitioner said that his answers at the time were not his "sound mind" answers.

The Petitioner agreed that the transcript showed that he knew who his attorney was and that she had filed pretrial motions on his behalf. The Petitioner said all of his answers were a result of coercion by "the whole process." He said he was coerced during the interrogation by the police telling him that he was going to receive the death penalty, so he was "under the shock of coercion the whole time," which included the almost three years between the charges and his guilty plea.

The Petitioner then contended that second degree murder is not a lesser included offense of first degree murder, so he was not properly indicted. The Petitioner said

4

someone gave him a paper with the words to read at his allocution. He did not prepare those words, and he did not think that he read them to himself before reading them aloud.

The Petitioner agreed he told the judge that his medication was helping him but then said that he thought he was off his medication at the time he entered his guilty plea.

The Petitioner said that Counsel came to see him in jail "[a] lot." He agreed that other inmates complained to him that their own attorneys did not come to see them as much as Counsel came to see the Petitioner. He agreed that she came to see him but said that she did not do everything that needed to be done.

Counsel testified that the Petitioner had a diagnosis of PTSD with unspecified psychosis, according to his jail records. She did not think that he was incompetent, and he seemed to effectively communicate with her about his case. Counsel said that she had reviewed the Petitioner's discovery with him and discussed the motions that he wanted filed. She filed about ten motions in his case, including a motion to suppress his statement, a motion to suppress evidence found on his cell phone, and a motion to obtain his sister's mental health records. Counsel explained that, after reviewing the recording of the Petitioner's statement, the State agreed not to introduce the statement.

Counsel also discussed potential defenses with the Petitioner. She hired an investigator and retained an expert to review the cell phone data. The expert agreed with the State that the Petitioner's cell phone data showed that he took thirty steps at the same time as the shooter is seen on the video getting out the car and walking toward the victim. Counsel felt that the expert's opinion would be detrimental to the Petitioner, which she told him. Counsel believed that she investigated this case to the best of her abilities.

The Petitioner expressed his desire for a trial, but it was at a time when courts did not have trials for eighteen months because of COVID. Counsel said that she told the Petitioner her concerns about going to trial, especially considering the health app information on his cell phone. She denied telling him that she did not feel like going to trial but said she discussed that she believed it was not in his best interest to go to trial. She opined, however, that it would be difficult to prevail at trial.

Counsel said she helped the Petitioner prepare his allocution, but he participated in drafting it and reviewed it before taking the stand. She felt the Petitioner appeared comfortable reading what they had prepared.

During cross-examination, Counsel agreed that Ms. Ward, the Petitioner's sister, first gave a detailed account of the shooting, naming the Petitioner as the shooter. At the preliminary hearing, she seemed reluctant to name him as the shooter, but she ultimately

5

did so. Then, when she spoke to Counsel and the investigator, she recanted those statements and indicated that someone else was the shooter. She told Counsel that someone else was in her car and shot the victim and that the Petitioner was not in her vehicle. Counsel said she investigated the person whom Ms. Ward identified as the shooter but found that he was deceased at the time of her investigation.

Counsel said she was prepared to go to trial with this defense, that someone else shot the victim. She explained that it was going to be difficult to argue to make to the jury that the Petitioner was not in the car but that his cell phone was in the car and his cell phone got out of the car, without him, at the same time the shooting occurred.

Counsel said that the prosecutor offered to allow the Petitioner to plead guilty to second degree murder in exchange for twenty-five years, but she would reduce that to twenty if he apologized to the victim's family. She spoke with the Petitioner and indicated that this was unconventional and gave him some time to think about it. Counsel and the Petitioner talked about the offer on multiple occasions and talked with his family.

In a subsequent written order, the post-conviction court denied relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner maintains that Counsel's ineffective assistance rendered his guilty plea unknowing and involuntary. He asserts that the factors to be considered, including his relative intelligence and familiarity with criminal proceedings, show that he did not have a full understanding of the proceedings. Further, the medication he was taking, Zyprexa, further caused him to not understand the proceedings. The Petitioner concludes that, because he did not understand the guilty plea proceeding and cannot recall his reason for pleading guilty, then the guilty plea was not adequately communicated.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's

errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction [ ] resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In post-conviction proceedings, the petitioner has the burden of proving the allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f). In order for evidence to be clear and convincing, it must eliminate any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012). An ineffective assistance of counsel claim is a mixed question of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). A post-conviction court's findings of fact are reviewed de novo with a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing T.R.A.P. 13(d)). A post-conviction court's conclusions of law are reviewed under a pure de novo standard with no presumption of correctness. *Id.* Questions concerning the credibility of witnesses and the weight and value of their testimony are within the trial court's province. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn.1997).

Ineffective assistance of counsel claims require this Court to determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, considering all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally

7

compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

Within the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Serrano v. State*, 133 S.W.3d 599, 605 (Tenn. 2004). To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). When evaluating the knowing and voluntary nature of a guilty plea, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 2005); *Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). This court may consider the following circumstantial factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). "[A] plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010) (quoting *Mellon*, 118 S.W.3d at 345). A defendant's solemn declaration in open court that his plea is knowing, and voluntary

creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

After review, we conclude that the trial court did not err when it found that the Petitioner's guilty plea was knowingly and voluntarily entered. The Petitioner testified that Counsel came to visit him several times for extended periods. At the guilty plea hearing, he said that he was "very" satisfied with her representation. He said he understood the charges against him, his rights, and the ramifications of his plea. He said he was not pressured or coerced into pleading guilty, and he read a statement in which he admitted that he shot the victim and apologized for his actions. He said he was taking medication and that, had he started taking the medication sooner, the shooting may have been prevented.

Counsel never thought the Petitioner's competency was in question, as he was able to communicate with her effectively. Counsel fully discussed the Petitioner's charges and possible defenses with him. She explained the State's plea offer to him and gave him several days to consider the offer. After discussing the offer with his family, the Petitioner decided to enter a guilty plea.

The Petitioner's bare allegations that he suffered memory gaps because of the medication he was taking at the time of the guilty plea hearing is not sufficient to prove by clear and convincing evidence that he is entitled to post-conviction relief. As Counsel testified, the State's evidence against the Petitioner was strong, and, by agreement, his charge was reduced from first degree murder to second degree murder and his sentence reduced to twenty years. We agree with the trial court that the Petitioner has not proven that his guilty plea was unknowingly or involuntarily entered. The Petitioner is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

9